IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCOTTRA CARR,

    Plaintiff/Counter-Defendant,

v.                                                                                 1:15-cv-01097-LF-KBM

JAY MEYER,

    Defendant/Counter-Plaintiff,

and

DYNAMIC TRANSIT COMPANY,

    Defendant,

and

JAY MEYER and
DYNAMIC TRANSIT COMPANY,

    Third Party Plaintiffs,

v.

CELADON GROUP, INC., d/b/a
CELADON TRUCKING SERVICES,
a foreign corporation,

    Third Party Defendant.

## ORDER

THIS MATTER comes before the Court on Counter-Plaintiff/Third Party Plaintiff Jay Meyer's ("Meyer") Motion for Leave to File Second Amended Third Party Complaint (Doc. 86) filed November 7, 2016, and fully briefed December 16, 2016 (Doc. 104).  For the following reasons, the Court denies Meyer's motion.

**I.      Background**

Plaintiff Scottra Carr ("Carr") initiated this case against defendants Jay Meyer and Dynamic Transit Company ("Dynamic Transit") in the Second Judicial District Court for the State of New Mexico on July 6, 2015.  Doc. 1 at 9–12.[1]  On August 31, 2015, Dynamic Transit filed an amended answer to Carr's complaint, which named Celadon Trucking Services ("Celadon") as a third party defendant.  *Id.* at 33–38.  On October 9, 2015, Meyer filed his answer to Carr's complaint and alleged counterclaims against Carr and third party claims against Celadon.  *Id.* at 43–51.  In counts 1 and 2, Meyer alleged claims of negligence and negligence *per se* against Carr, which caused Meyer to suffer damages.  *Id.* at 48–50.  In counts 3 and 4, Meyer alleged that Celadon was responsible for Carr's alleged negligence based on the doctrine of respondeat superior, and also was negligent in hiring, training, and supervising Carr.  *Id.* at 50.  Celadon removed the case to this Court on December 3, 2015.  *Id.* at 1–8.  On November 9, 2016, Chief Magistrate Judge Karen Molzen held a settlement conference partially settling the case as to Carr's claims against Meyer, and Dynamic Transit's third party claims against Celadon.  *See* Docs. 87, 100.  The remaining claims are Meyer's counter claims against Carr and Meyer's third party claims against Celadon.

In the instant motion, Meyer seeks to add an additional claim against Celadon for punitive damages.  Doc. 86.  Meyer's punitive damages claim is based on emails sent from a Celadon trainer, Coleen Harris ("Harris"), to Celadon's training coordinator, George Hanssen

---

[1] The page citations refer to the page numbers on the upper right hand corner of the document, which were assigned by the Court's CM/ECF system.

("Hanssen"), dated 7/2/14 and 7/5/14, discussing Carr's lack of driving skills. *Id*. at 4–5; Docs. 86-1 at 26, 92–10.  A third email, dated 7/13/14, was sent from Harris to Linda Roach, Celadon's driver manager, and which included the 7/2/14 email from Harris to Hanssen.  Doc. 86-1 at 27–28.  Meyer had these emails in his possession more than three months prior to filing his motion to amend.

A timeline of relevant events is helpful to understanding the disposition of this motion.

| | |
|---|---|
| Deadline for Meyer to move to amend pleadings | February 26, 2016 (Doc. 19) |
| Meyer served first set of discovery on Celadon | March 11, 2016 (Docs. 28, 29) |
| Celadon responds to discovery, but did not disclose emails | April 28, 2016 (Doc. 104-3) |
| Harris forwards 7/2/14 and 7/5/14 email to Meyer's counsel | June 2, 2016 (Doc. 104 at 4) |
| Celadon disclosed 7/13/14 email (with 7/2/14 email attached) | June 21, 2016 (Docs. 104 at 5, 104-4) |
| Meyer took Harris' deposition | August 3, 2016 (Doc. 104-5) |
| Meyer took Carr's deposition | September 22, 2016 (Doc. 104 at 5) |
| Discovery terminated | October 17, 2016 (Doc. 19) |
| Meyer files his motion for leave to amend | November 7, 2016 (Doc. 86) |
| Settlement Conference | November 9, 2016 (Doc. 87) |

The initial pretrial conference is scheduled on January 10, 2017.  Doc. 38.  The final pretrial conference is February 16, 2017 (Doc. 98), and a jury trial is scheduled for February 21, 2017 (Doc. 38).

3

**II.      Discussion**

Rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders, and Rule 15 governs amendments to pleadings generally. *Walker v. THI of New Mexico at Hobbs Ctr.*, 262 F.R.D. 599, 603 (D.N.M. 2009). Here, while Meyer can establish "good cause" under Rule 16, his undue delay caused unfair prejudice to Celadon. I therefore deny his motion under Rule 15.

**A. Good Cause to Modify the Scheduling Order under Rule 16.**

A party seeking to amend his complaint after the scheduling order deadline has passed is essentially seeking to modify the scheduling order and must establish good cause for doing so. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). This requirement stems from Rule 16 of the Federal Rules of Civil Procedure, which provides that a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The good cause standard requires the moving party to show that the scheduling deadlines could not be met despite the moving party's diligent efforts. *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240.

Pursuant to the scheduling order, Meyer had until February 26, 2016, to move to amend his pleadings or add additional parties. Doc. 19. There is no dispute that Meyer did not have the information necessary to add a punitive damages claim before the February 26, 2016 deadline. Accordingly, Meyer establishes good cause to amend the scheduling order under Rule 16. *See Layne Christensen Co. v. Bro–Tech Corp.*, No. 09–cv–2381–JWL–GLR, 2011 WL 3847076, at *4 (D. Kan. 2011) (finding that defendant established good cause under Rule 16 because the new information supporting the amended answer was obtained after the deadline for amendment);

*Pumpco, Inc. v. Schenker Int'l, Inc*., 204 F.R.D. 667, 668–69 (D. Colo. 2001) ("The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order has expired constitutes good cause to extend that deadline.").

### B. Leave to Amend Under Rule 15

Rule 15 governs amendments to pleadings.  *See* FED. R. CIV. P. 15.  "Except when an amendment is pleaded 'as a matter of course,' as defined by the rule, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).  Whether to grant leave to amend a complaint pursuant to Rule 15(a) is within the trial court's wide discretion.  *See Minter*, 451 F.3d at 1204 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)); *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir.1999).  The court of appeals will not reverse a lower court's decision to permit an amendment unless the decision was "arbitrary, capricious, whimsical, or manifestly unreasonable."  *Bylin*, 536 F.3d at 1229.

Courts "should freely grant leave when justice so requires."  *Id*.; FED. R. CIV. P. 15(a)(2).  Rule 15(a)(2)'s purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Minter v. Prime Equip*., 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted).  A district court is justified in refusing leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1365–66 (10th Cir. 1993).  "It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend,

especially when the party filing the motion has no adequate explanation for the delay." *Id*. at 1365–66 (citations omitted).

   1. *Meyer unduly delayed filing his motion for leave to amend.*

Meyer obtained the 7/2/14 and 7/5/14 emails directly from Harris on June 2, 2016. Doc. 104 at 4. Celadon disclosed the 7/13/14 email (and the attached 7/2/14 email) on June 21, 2016. *Id* at 5. Meyer then took Harris' deposition on August 3, 2016. *Id.* Meyer admits that "[i]n addition to developing Ms. Harris' credibility, her deposition also revealed that Ms. Harris had made calls to Celadon's head of training prior to sending the emails, thereby strengthening the case for punitive damages." *Id*. at 9. Meyer did not seek leave to amend shortly after Harris' deposition in August 2016. Instead, he waited to file the motion on November 7, 2016, two days before to the settlement conference. Meyer does not adequately explain why he waited three months after acquiring the information that forms the basis of his amendment to file his motion to amend.

In his reply, Meyer argues that it was reasonable for his counsel to wait until after Carr's deposition in September 2016 before deciding to seek an amendment of the complaint. Doc. 104 at 9. He does not explain, however, how Carr's deposition would have changed the decision to amend. Meyer further argues that Celadon caused a certain amount of delay by failing to disclose the emails in a timely fashion. Doc. 104 at 8–9. Although Celadon did not disclose the 7/13/14 email until June 21, 2016, Meyer had enough information by August—with Harris' emails and deposition—to determine whether he had a viable punitive damages claim. Therefore, Celadon's alleged violations of its discovery obligations did not impact Meyer's ability to file a motion for leave to amend in August of 2016.

2. *Meyer's undue delay is unfairly prejudicial to Celadon.*

Although Meyer argues that amending his complaint would not require reopening discovery or postponing the trial setting, Doc. 86 at 2, Celadon contends that it would have conducted discovery differently had the punitive damages claim been raised during the discovery phase of the trial. Doc. 92 at 4. Further, its opportunity to file a dispositive motion on punitive damages was lost as the motion to amend was pending when the deadline to file such motions past. *Id*. at 4–5. I agree with Celadon. By waiting until November to file his motion for leave to amend, Meyer prevented Celadon from conducting discovery or filing a dispositive motion with regard to punitive damages. Adding the punitive damages claim at this late date is unfairly prejudicial to Celadon and would require reopening discovery, which would significantly delay the resolution of the case.

IT IS THEREFORE ORDERED that Counter-Plaintiff/Third Party Plaintiff Jay Meyer's Motion for Leave to File Second Amended Third Party Complaint (Doc. 86) is DENIED.

_____
Laura Fashing
United States Magistrate Judge